SPECIAL INDEMNITY FUND of the State of Oklahoma, administered by the State Insurance Fund, Petitioner,

v.

Mrs. Evelyn WILLIAMS, widow of C. O. Williams, deceased, and Henrietta Williams, Marion Williams, Lelia Kay Williams, and Lina May Williams, the minor children of C. O. Williams, deceased; Trigg Drilling Company, Traders and General Insurance Company, and the State Industrial Commission of the State of Oklahoma, Respondents.

No. 36700.

Supreme Court of Oklahoma.

April 26, 1955.

Mont R. Powell, William R. Saied, Oklahoma City, for petitioner.

Simons, Simons, Mitchell, Headrick & Mitchell, Enid, Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, Justice.

On June 13, 1951, C. O. Williams filed a claim for compensation against Trigg Drilling Company and its insurance carrier and Special Indemnity Fund in which he states that on the 14th day of November, 1950, while in the employ of Trigg Drilling Company he sustained an accidental injury consisting of an injury to his left shoulder and collar bone. The injury was caused by a piece of iron which fell and hit him on the shoulder resulting in some permanent disability to his left arm; that he was then a physically impaired person as the result of an injury sustained in 1948.

On July 3, 1951, Williams died by drowning and on July 29 the case on motion of

Evelyn Williams, surviving widow of deceased, was revived in her name and the names of four minor children, heirs of deceased, who we shall hereinafter refer to as respondents.

The trial commissioner to whom the case was assigned at the close of the evidence found that on the 14th day of November, 1950, C. O. Williams while in the employ of Trigg Drilling Company sustained an accidental injury consisting of an injury to his left shoulder and arm; that after the filing of his claim C. O. Williams died from causes other than the injury sustained on November 14, 1950; that as a result of his injury C. O. Williams was temporarily totally disabled to and including June 18, 1951, for which period of time he has been paid compensation for such disability and that as a further result of his injury he sustained a 50 per cent permanent partial disability to his left arm and would have been entitled to compensation against Trigg Drilling Company and its insurance carrier for 125 weeks at $25.00 per week or a total sum of $3,125.00 and entered an award in favor of respondents and against Trigg Drilling Company and its insurance carrier accordingly and reserved the right to respondents to proceed against Special Indemnity Fund at a future date. At a hearing thereafter held before trial commissioner the commissioner awarded compensation against the Fund which was vacated on appeal to the Commission en banc and the cause remanded to the trial commissioner for further hearing.

On the 29th day of July, 1954, the case came on for further hearing before a trial commissioner who after referring to the prior hearings and awards entered found:

"That at the time of his accidental personal injury of November 14, 1950, the deceased, C. O. Williams, was a previously impaired person by reason of a prior injury to his right hand in 1948; that at the time of his injury of November 14, 1950, his rate of compensation was $25.00 per week.

"That deceased sustained 50 per cent permanent partial disability to his left arm by reason of his injury of November ber 14, 1950, and 15 per cent permanent partial disability to his right hand by reason of his 1948 injury; that by reason of the combination of the two injuries, deceased was 50 per cent permanently partially disabled to the body as a whole; that by reason of the 50 per cent permanent partial disability to the body as a whole, deceased would have been entitled to 250 weeks of compensation, less the deductions allowed by law of 125 weeks for injury to his left arm and 30 weeks for injury to his right hand, leaving a net award of 105 weeks, or a 21 per cent increase in permanent partial disability to the body as a whole, or the amount of $2,525.00, to be assessed against the Special Indemnity Fund."

And upon such finding entered an award accordingly which was sustained on appeal to the Commission en banc.

The Fund brings the case here to review this award and relies for its vacation on two separate propositions. In its first proposition the Fund contends that upon the death of Williams the Commission was without power or jurisdiction to revive the cause of action as against it. The Fund however concedes that if an award had been entered against it prior to the date of the death of Williams the award could have been revived. Special Indemnity Fund v. Duff, 200 Okl. 57, 191 P.2d 584. It however contends that after the death of Williams the action itself could not have been revived but abated upon his death. There might be some merit in this contention if Williams had died as a result of the injury sustained November 14, 1950, but since the finding of the Commission is that he died from causes other than the injury the contention cannot be sustained. The statute, 85 O.S.1951 § 41, after providing that when an award of the State Industrial Commission becomes final the whole sum or any unpaid portion thereof shall operate as a final adjudicated obligation and payment thereof may be enforced by the claimant or in case of his death by the surviving beneficiaries entitled to the proceeds as provided in section 1, Ch. 29, S.L.1933, 85 O.S.1951 § 48, further provides:

"An award for disability may be made after the death of the injured employee, when death results from causes other than the injury."

In Hazel-Atlas Glass Co. v. Walker, 195 Okl. 470, 159 P.2d 268, we held:

"The statute, 85 O.S.1941 § 41, which provides 'an award for disability may be made after the death of the injured employee when death results from causes other than the injury' does not purport to violate the cause of action for death from injury nor limit liability therefor contrary to section 7, Art. XXIII of the Constitution and confers jurisdiction upon the State Industrial Commissioner to revive a proceeding and to award compensation where the conditions named in the statute exist."

See, also, Schmidt v. Moncrief, 194 Okl. 377, 151 P.2d 920.

■ In Special Indemnity Fund v. Duff, supra, we held that the statute above referred to applies to the Special Indemnity Fund. The contention of the Fund that the action as against it abated upon the death of Williams cannot be sustained.

The evidence is undisputed that C. O. Williams while in the employ of Trigg Drilling Company sustained an accidental injury to his left shoulder and arm; that he was at that time a physically impaired person as the result of an injury sustained in 1948 to his right hand; that his last injury occurred at the time and in the manner stated in deceased's claim for compensation; that after he filed his claim Williams died from a cause other than the accidental injury sustained on November 14, 1950, and that as a result of his old injury sustained in 1948, he was awarded compensation by the State Industrial Commission on the basis of 15 per cent permanent partial disability to his right hand. The Fund however contends that there is no competent medical evidence to sustain the finding and award of the State Industrial Commission and that the award entered against it by the Commission is excessive. The medical evidence consists of the report of Dr. R and oral testimony of Dr. C who in substance testified: He examined and treated Williams for his injury sustained on November 14, 1950. He commenced his treatment shortly after the injury occurred. His injury consisted of an injury to his left shoulder and arm; that as a result of the injury he sustained a 90 per cent loss of use of the arm. He did not examine his right hand but knew from a hospital record that he had sustained a former injury to that hand but the record did not disclose the extent of the injury or disability sustained to the hand. He however ascertained at the prior hearing that Williams had been awarded compensation for the injury to his right hand on the basis of 15 per cent permanent partial disability to the hand and that based on such disability to the hand and 90 per cent disability to the left arm as a result of the last injury in his opinion respondent sustained a 50 per cent permanent partial disability to his body as a whole. On further examination the doctor said that as a result of his combined injuries Williams sustained a 57½ per cent permanent partial disability to his body as a whole. The doctor at the first hearing testified that as a result of his combined injuries Williams sustained a 50 per cent permanent partial disability to his body as a whole.

It is the contention of the Fund that the evidence of the doctor should be disregarded and not be considered for the reason that it is based upon speculation, conjecture and surmise and therefore without probative value. While the evidence of the doctor is in some respects indefinite and uncertain as pointed out in the brief of the Fund and to a certain extent contradictory however after considering his evidence as a whole we cannot say that it is based purely upon conjecture, speculation and surmise and therefore without probative value. The record discloses that Dr. R filed his written report which was presumably admitted in evidence at the first hearing in which the doctor states that deceased came to his office on June 13, 1951 for examination. He obtained a case history that deceased while connecting pipe joints sustained an injury when a piece of iron fell and struck him on the left shoulder. He consulted Dr.

C. X-ray examination revealed a fracture of the clavicle. Deceased was operated on the following day when part of the clavicle was removed. A second operation was performed three months later. Patient was in the hospital three months. Heat treatments were administered every other day during his hospital stay. Deceased returned to work on May 25, 1951.

The doctor in his report after referring to various complaints of deceased as to his condition and after his examination and stating in detail conditions found to exist further states:

> "Opinion: That patient has a good functional result of the injury described above. I think he has a twenty-five percent loss of the use of the left upper extremity, as a result of this accident."

It will thus be noted that the medical evidence is in conflict as to the disability sustained by deceased as a result of his last injury. One doctor places the disability to the arm at 25 per cent but makes no statement as to a prior injury. The other doctor fixes the disability to the left arm as the result of the last injury at 90 per cent and states he has sustained a disability to the right hand of 15 per cent and that as the result of the combined injuries he has sustained from 50 to 57½ per cent permanent partial disability to the body as a whole.

The Commission found that as a result of his last injury deceased sustained 50 per cent disability to his left arm and that as a result of his former injury he sustained a 15 per cent disability to his right hand and that as a result of the combination of both injuries he sustained a 50 per cent permanent partial disability to the body as a whole. While the evidence of either one of these doctors standing alone might not be sufficient to sustain the finding when their testimony is considered together it is sufficient. See in this connection, Special Indemnity Fund v. Davis, Okl., 264 P.2d 320.

The award of the Commission under the above finding is slightly excessive. The Commission found that as a result of his overall disability deceased would have been entitled to compensation for 250 weeks from which amount there should be deducted 125 weeks disability to the left arm and 30 weeks disability to the right hand leaving 105 weeks at $25.00 per week or the sum of $2,525.00 to be assessed against the Fund. In this respect there is a miscalculation as after a deduction of 125 weeks disability to the left arm and 30 weeks disability to the right hand there would be left only 95 weeks at $25.00 per week compensation to be assessed against the Fund or a total sum of $2,375.00.

Respondents concede that the award against the Fund is to this extent excessive and agree that it should be modified accordingly.

The award is therefore modified by reducing the amount as against the Fund from $2,525.00 to $2,375.00 and as so modified, is sustained.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.